No. 2983

Second Circuit

---

POWELL v. SPENCER BROS.

---

(June 28, 1927. Opinion and Decree.)
(July 14, 1927. Application for Rehearing.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Appeal—Par. 625.—Master and Servant—Par. 100(I).**

The finding of the trial court as to the amount of wages an injured employee suing under the Workmen's Compensation Act (Act No. 20 of 1914, and amendments) had been earning at the time he was injured and the amount of wages he was able to earn thereafter being questions of fact, its findings will not be disturbed unless manifestly erroneous.

Bowers vs. Orleans Producing & Refining Corp., 1 La. App. 784.

2. **Louisiana Digest—Master and Servant —Par. 159, 160d.**

The fact that an injured employee, suing under the Workmen's Compensation Act (Act No. 20 of 1914, and amendments) negligently employed a general medical practitioner to set a broken wrist bone, instead of a surgeon, whereby his injury was rendered more serious than it otherwise might have been, will not deprive such employee of his right to compensation. Especially is this so in view of the requirement of the Act that the employer shall "furnish the employee reasonable medical, surgical and hospital services and medicines, not to exceed two hundred fifty dollars in value."

(The recent amendment of Act 20 of 1914 is Act 85 of 1926.—Editor's Note.)

Appeal from the Tenth Judicial District Court of Louisiana, Parish of Natchitoches. Hon. John F. Stephens, Judge.

Action by Shelton Powell against Spencer Brothers.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

James W. Jones, Jr., of Natchitoches, attorney for plaintiff, appellee.

Phanor Breazeale, of Natchitoches, attorney for defendant, appellant.

STATEMENT OF THE CASE

REYNOLDS, J. This is a suit under the Workmen's Compensation Act (Act No. 20 of 1914, and amendments) to recover compensation for disability suffered by plaintiff by reason of the bone of his wrist being broken in an accident growing out of and in the course of his employment by defendant.

The defendant denied liability and set up various affirmative defenses. The District Court rejected plaintiff's demands and

dismissed his suit and he appealed. This court (Powell vs. Spencer Brothers, 5 La. App. ———) decided that the plaintiff was entitled to recover and reversed the judgment of the court a quo, but being unable to determine from the evidence in the record what wages plaintiff was earning at the time of the accident or what wages he was able to earn thereafter, we remanded the case for the introduction of further evidence on these points.

On the second trial judgment was rendered in favor of the plaintiff and against defendant for $11.70 a week for twelve weeks, beginning July 25, 1925, and for $2.92 a week for not exceeding two hundred eighty-eight weeks, beginning October 25, 1925, with legal interest on each weekly installment from the date of its maturity until paid, and the costs of the suit. The defendant again appealed.

OPINION

The only question now before the court for decision is the amount of compensation the plaintiff is entitled to.

Plaintiff was engaged in hauling gravel for defendant at a fixed price per cubic yard, the price varying with the distance and conditions, for which purpose he furnished his own motor truck and labor. His net earnings therefore depended on the value of the use of the motor truck. It is defendant's contention that this value was more than that the lower court took in ascertaining plaintiff's net income from the work, and that therefore plaintiff's net earnings were much less than $3.00 a day, the basis used by the lower court in fixing the amount of compensation plaintiff was entitled to.

We are unable to find in the record any evidence definitely fixing the number of days in any given space of time that plaintiff hauled gravel or the reasonable value of the use of the motor truck, including the cost of necessary oil and gas and repairs for it, during any lapse of time when it was in use, or how much money plaintiff actually earned by his labor and the use of his motor truck during any space of time. Plaintiff was given metal checks of a fixed money value for every load of gravel he hauled and these checks were exchanged for actual money periodically. No exact record was kept of the quantity of gravel plaintiff hauled during any day or week. We must therefore ascertain his earnings from other evidence.

Plaintiff himself testifies that at the time of the accident he was earning $3.00 a day and in this he is corroborated by Mr. H. S. Spencer, who testified, page 26.

"Q. The custom out there is to pay $2.50 for the average truck driver?
"A. The average truck driver, yes.

"Q. And a good truck driver got $3.00?
"A. The best, yes."

There is no evidence or even intimation in the record that plaintiff was not a good truck driver. He testified, page 4, that he had been driving a truck from three to four years.

It is not disputed that plaintiff was totally disabled for twelve weeks and we think the evidence warranted the court allowing him $11.70 a week for that many weeks, being 65 per cent of the wages he was receiving for the period of his temporary total disability.

This brings us to the award of $2.92 a week for not exceeding two hundred eighty-eight weeks, as for partial disability, being 65 per cent of the difference between the wages plaintiff was earning at the time of the accident and the wages he is now able to earn.

The second trial took place eighteen months after the accident and the evidence then taken shows that plaintiff was still partially disabled by his injury. He testified on the second trial (page 2).

"Q. Have you been able to hold any job of any kind since you got your arm broke?

"A. No, sir; I haven't had a job of any kind, except farming a little.

"Q. Have you been able to plow or hoe?

"A. Not all day, no sir; I can't hold out.

"Q. Why?

"A. Because my arm hurts too bad; I haven't got the strength."

Doctor J. B. Glass testified, pages 16, 17, 18, 19.

"Q. Did you treat Shelton Powell?

"A. Yes, sir; in 1925.

* * *

"Q. I want you to examine Mr. Powell's arm now.

"A. That is what I call a 'Ford' fracture.

* * *

"Q. It incapacitates his entire right arm, don't it, doctor?

"A. Yes, it does.

"Q. That will go with him more than 300 weeks after the accident?

"A. It will go with him to the grave."

On cross-examination he testified, page 18.

"Q. What, in your judgment, is the impairment to the ability of Shelton Powell to use his hand and arm in farming, making a crop. How much would it be impaired after you discharged him, and how long would that impairment last?

"A. Mr. Phanor, I would not know how to answer that; he couldn't use his arm like he could before it was hurt.

"Q. I know that.

"A. You want my judgment?

"Q. That is what I asked for. What is the impairment to his disability. It was broken, and so was mine. What, in your judgment, is the percentage of impairment, in making a crop?

"A. I just have to guess at it.

"Q. Make your own estimate.

"A. I know it is impaired; I know his arm was broken; it depends on how he gets along, Mr. Phanor; I would say half; I guess that would be about a half, Mr. Phanor."

Doctor C. R. Reed testified, pages 21 and 22.

"Q. Have you seen this x-ray?

"A. Yes, sir.

"Q. Have you examined Shelton Powell's hand?

"A. Yes, sir.

* * *

"Q. When did you make your first examination of the hand and arm?

"A. It was in November or December last.

"Q. Of 1926?

"A. Yes, sir.

"Q. As an expert, do you claim that his arm is impaired?

"A. Yes, sir.

"Q. How long will that impairment last?

"A. The balance of his life.

"Q. What per cent is the impairment?

"A. It is a difficult matter to ascertain on a percentage basis; but, considering the condition of his arm, and considering the way he makes his living, by manual labor, I would say that he is impaired, has a disability that is going to run about twenty or twenty-five per cent.

"Q. That is the present per cent. It has been 18 months since he was hurt.

"A. I would say about twenty-five per cent.

"Q. At the present time?

"A. Yes; I don't think it will ever be any better than that; than what it is now."

Doctor M. H. Phelps testified, pages 23, 24.

"Q. You are the physician and surgeon who treated this plaintiff and made these pictures?

"A. I examined him and made the pictures.

* * *

"Q. Under an order of court?

"A. Yes, sir.

"Q. Have you had occasion to examine

Mr. Powell's hand several times?

"A. Two or three times.

"Q. What is the condition of the hand?

"A. He had a dislocation of the small bones of the ulna; small bones in the hand; a jamming; and he also had a fracture of the radius, lower end, it is a small chip fracture.

\* \* \*

"Q. Is there any impairment of Mr. Powell's hand?

"A. Yes.

"Q. How long will that be?

"A. That is, his hand will remain like it is the rest of his life; it will no doubt improve and get better by use, and the more he uses it the better it will get.

"Q. You find an impairment now, do you?

"A. Yes.

\* \* \*

"Q. What is the percentage of the impairment?

"A. At the present time, about twenty or twenty-five per cent."

We are convinced that the evidence warranted the finding of the court that at the time of the second trial plaintiff's ability to earn wages was reduced twenty-five per cent as a result of his injury. Seventy-five per cent of $16.00, his weekly earning capacity before he was injured, is $13.50, which represents his earning capacity since the accident. The difference between the two amounts is $4.50 and sixty-five per cent of this difference is $2.92; and the District Court allowed plaintiff $2.92 a week for not exceeding two hundred eighty-eight weeks, as for partial disability, beginning at the end of the period of total disability. This was correct.

Defendant's counsel argued with great force and earnestness that plaintiff's disability was rendered greater than it otherwise might have been by reason of his having sought the services of a general medical practitioner to set the broken bone instead of a surgeon.

Neither negligence nor contributory negligence is a valid defense in an action under the Workmen's Compensation Act.

Farris vs. Louisiana Leaf Lumber Co., 148 La. 106, 86 South. 670.

Besides it was defendant's duty under the law, (Section 8, paragraph 5, as amended by Act No. 216 of 1924) to—

"furnish the employee reasonable medical, surgical and hospital services and medicines, not to exceed two hundred fifty dollars in value."

Plaintiff testified, page 36, that when he was injured he sent for Mr. Spencer, one of the defendants, and that Mr. Spencer said he was going to Locust Hill and did not have time to fool with him. On receipt of this information plaintiff sought out Doctor J. B. Glass, a general medical practitioner, who set the broken bone.

If the fracture was not properly set by Doctor Glass defendant is without right to complain of it after having been requested by plaintiff to provide him with medical treatment by a doctor of defendant's own selection and having failed to do so.

We find no error in the judgment appealed from, and, accordingly, it is affirmed.